THE VILLAGE OF BROOKLYN

*v.*

JAMES A. SMITH.

*Filed at Mt. Vernon September 29, 1882.*

| | |
|---|---|
| 104 | 429 |
| 23a | 106 |
| 104 | 429 |
| 127 | 570 |
| 127 | 571 |
| 104 | 429 |
| 34a | 97 |
| 104 | 429 |
| 136 | 127 |
| 104 | 429 |
| 58a | 456 |
| 104 | 429 |
| 163 | 407 |
| 104 | 429 |
| 179 | 419 |
| 104 | 429 |
| 180 | 40 |
| 104 | 429 |
| 185 | 330 |
| 104 | 429 |
| f188 | 1482 |
| 188 | 6482 |
| e188 | 483 |
| 104 | 429 |
| 197 | 1204 |
| 104 | 429 |
| e208 | 2 45 |
| 104 | 429 |
| 215 | 2493 |

1.  STREETS—*bounded upon navigable stream—of their width—whether limited by figures on the plat.* A town was laid out in this State, on the eastern bank of the Mississippi river, and in the recorded plat thereof a street was designated between the western tier of blocks and the river, called "Water street," marked as eighty feet' wide, but the western line of the street on the plat was not a straight line, but an irregular, wavy line, indicating the river as its western boundary, and the proprietors expressly reserved on the plat the exclusive right to all ferry privileges, and the proof showed that such street had always been treated and used as extending to the river, until recently: *Held,* that such street must be considered as extending to the river, and that the designation of the width of the street was not to limit its width, but to show the average width between the front tier of blocks and the river.

2.  A street bounded upon a navigable stream, above high water mark, like a grant so bounded, will extend to the center of the stream, unless an intention is clearly shown in the grant or act laying out the street, to stop at the edge of the river.

3.  SAME—*diminishing width of streets by a re-survey and re-platting.* It is the original plat, properly executed and recorded, and the act of the original proprietors of a town in making the same, that make a dedication of land for a street; and the corporate authorities of such town, after its incorporation, have no power to change or subtract from such dedication by any re-surveying and re-platting of the lots and streets. The original survey and dedication must prevail in such case, and the village or town will not be estopped from insisting on the dedication as originally made.

4.  SAME—*plat—operates as a grant.* The acknowledgment and recording of a plat of a town by the proprietors of the land so laid out into lots and streets, under the statute, has all the force of an express grant to convey from them the land embraced by the streets, and vest it in the corporation.

5.  SAME—*in whom the fee vests—and for whom.* The fee of the streets of a village laid out by plat under the statute, and recorded, is held by the corporation in trust for the benefit of the lot owners and the public. If the village has not a corporate existence, the fee in the streets remains in abeyance, subject to vest in the corporation the moment it is created.

6.  ICE—*ownership therein.* In *Washington Ice Co.* v. *Shortall,* 101 Ill. 46, it was held that ice formed upon a stream of water belongs to the owner

of the bed of the stream. So where a street of an incorporated village situate upon the bank of the. Mississippi river, extends to the center of the stream, the fee of the street is in the corporation for the benefit of the lot owners and the public, and the village authorities· may properly interpose to prevent an intruder from cutting and removing ice which may have formed upon such street.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

The bill in equity in this case for an injunction, filed December 27, 1879, sets out that on the 23d day of December, 1876, James A. Smith, the complainant, leased all that part of United States survey No. 764, in St. Clair county, Illinois, which lies west of Water street, in the town ·of Brooklyn, and extending to the center thread of the Mississippi river, from James Purdy and wife, they then being in the actual possession thereof; that complainant then took possession of said tract of land, and placed on the shore of said river the necessary works to carry on his business of gathering ice from the river, and had gathered the crops of ice for the winters of 1876–77, and 1878–79, there being no ice crop fit to gather in the winter of 1877 and 1878; that complainant had made all the necessary arrangements to gather the present ice crop formed and forming on said land leased by him, at great trouble and expense, and had taken possession of the ice, staked it out, and his servants were engaged in marking it out for cutting; that if he was hindered from such work he would suffer irreparable injury; that the village of Brooklyn had arrested complainant's servants, and threatened to continue arresting them, and· had sent one Joseph Voise to interfere with complainant, and to cut ice on his said land, and that·said Voise threatened to enter upon and cut said ice, while the village protected him by its police force, and by the continuous arrest of complainant's employés; that none of said lands or ice were within

the limits of said village of Brooklyn. The village of Brooklyn and Voise were made parties defendant, and the bill asked that they, their officers and servants, be enjoined from in any manner interfering with the complainant in and about gathering the ice crops on all that part of the Mississippi river lying west of Water street, of the village of Brooklyn, or included in United States survey No. 764, and from entering thereupon to cut, or from cutting, ice thereon, or from arresting or in any other manner prosecuting the complainant, his servants, agents or employés, in carrying on his business. Upon the filing of the bill a temporary injunction was granted. The answers of the defendants denied the possession, or any right of Purdy or complainant, insisting they were but mere trespassers; denied that there was any land between the west line of said Water street and the river, and insisted that Water street was bounded by the river; that the premises in question formed a part of Water street, and were within the corporate limits of the village of Brooklyn, and that any arrest, or threatened arrest, of complainant's servants, was for the violation of an ordinance of said village in relation to the interference with, or obstruction of, the public landing or streets of such village. Upon final hearing, on proofs taken, a decree was entered in favor of the complainant, making the injunction perpetual, which, on appeal to the Appellate Court for the Fourth District, was affirmed, and a further appeal then taken to this court.

It appears that the town of Brooklyn was laid out in 1837, by the five proprietors, Collins, Austin, Tabor, Morris and Osborn, on the east bank of the Mississippi river, in St. Clair county. The town was surveyed and platted, and the plat recorded. The proprietors had a public sale of lots the next year, and disposed of some lots, and, as one witness says, eventually sold the lots out, from time to time. In 1839 several houses were erected on the lots, and in 1840 quite a number of houses had been put up. The witness Stiles

stated that he moved there in 1841, and that there must have been between forty and fifty families, and that there was quite a village there at that time; that he bought lots of Osborn, one of the proprietors, and they sold lots from time to time to different parties; that at that time he crossed the river in the ferry boat "Brooklyn;" that Water street then ran parallel with the river, and to the water's edge, and steamboats came there and loaded.

In 1845 the General Assembly passed an act, "that the entire town plat of the town of Brooklyn, as laid off and recorded, is hereby declared to be vacated: *Provided,* this act shall not interfere with or prejudice the rights of any individual or individuals who may have become the purchaser of any lot or lots in the aforesaid town." In 1873 the village was incorporated under the general law, embracing the old town and some additional territory. It had not been incorporated before that time.

Extensive accretions had formed on the river front of the town, comprising an area of one hundred acres or more. In the latter part of the year 1873, Louisa J. Purdy, the wife of James H. Purdy, took possession of this ground, claiming to be owner, as her husband says, under deeds from the heirs of Thomas Osborn, made in the years 1873, 1874, 1875, and, possibly, 1876. Mrs. Purdy enclosed the ground on three sides, with a fence composed of a board nailed on posts, and put up on the land a board shanty. Part of the fence was washed away the next spring of 1874, and in 1876 what remained of the fence and the shanty was entirely carried away by the high water. From 1873 Mrs. Purdy kept the ground leased to successive tenants, from time to time, till December 23, 1876, when Mrs. Purdy and her husband, James H. Purdy, who was a lawyer in St. Louis, leased the premises to the complainant, an ice dealer in St. Louis, for the term of ten years. On December 16, 1879, the village authorities passed an ordinance "to prevent encroachments

on the river front," making it a misdemeanor, punishable with fine, for any person to trespass or encroach upon or interfere with that part of the river front of the town lying between the easterly line of Water street and the center of the Mississippi river, for the purpose of controlling the formation of ice by artificial means, or for the purpose of cutting or taking away ice, or for any other purpose, without permission from the board of trustees, and making it the duty of the village constable to arrest all persons found violating the ordinance, upon view, and take them before the proper magistrate, to be dealt with, etc. It was under this ordinance that the arrests complained of were made, or threatened to be made. The ground was a sand-bar, which was overflowed every spring, and all the use made of it was for the purpose of taking the ice.

The original recorded plat of the town shows a tier of blocks, six in number, on the west side, and in front of them a street, designated Water street. The surveyor's certificate states the width of this street to be eighty feet.

William H. Cohens, a civil engineer, residing in St. Louis, testified that in the spring of 1837 he was employed by Collins and Tabor, two of the five proprietors, to lay out the town of Brooklyn, in Illinois, fronting on the eastern bank of the Mississippi river; that he surveyed and platted the town, and got the county surveyor of St. Clair county to verify and adopt his work, so that it might go of record; that the latter did so, and the plat was recorded, and the witness recognized the recorded plat in evidence as the one he made. He says that Collins and Tabor visited the land with him, and designated the work to be done; that Water street "was located on the high bank, and extended from the front of the town to the bank of the river, and followed the course of the river from north to south, and was on an average about eighty feet wide, sometimes more, on account of irregularities of the river bank; all the land west, extending westwardly

28—104 ILL.

from the front of the blocks fronting towards the river, was considered Water street, whatever that might be." Upon the plat is the following, signed by the proprietors : "We, the undersigned, proprietors of Brooklyn town, in disposing of and recording said lots and streets, reserve to said proprietors the exclusive right to all ferry privileges to us, our heirs and assigns forever." Upon the incorporation of the village, in 1873, the board of trustees employed one Ludwig to re-survey the original town of Brooklyn, which he did, and made a plat, which was accepted and adopted, and recorded. Upon this plat the western boundary of Water street appears to be a straight line, which touches the river at only one point, showing considerable space between such line and the river. The defendant Voise had permission from the village authorities to take the ice, and men under him had marked off the ice, and put a platform there, with the view of cutting and taking the ice before the complainant came there for that purpose.

Mr. WM. P. LAUNTZ, and Mr. M. MILLARD, for the appellant :

The bill does not allege that Smith or his lessees had or claim title. It claims nothing more than possession, and the proof fails to show an occupancy or use of the ground. An injunction will not be granted in such a case. Title must be averred and proved when rights in respect to land are involved. *Gleason* v. *Village of Jefferson,* 78 Ill. 399.

Laying out the town and recording the plat was a dedication of the streets for the use of the public, and when the corporation was created, the legal title vested in it. Until that time the fee remained in abeyance. *Canal Trustees* v. *Haven,* 11 Ill. 555 ; *Gebhardt* v. *Reeves,* 75 id. 301. But the dedication was just as effectual without incorporation. *Leech* v. *Waugh et al.* 24 Ill. 228.

A dedication along the margin of a navigable stream must be construed with reference to its objects, such as affording a

public landing, as well as for the purpose of a street. *Godfrey* v. *City of Alton*, 12 Ill. 29.

The action of the local authorities in re-platting the town, in which the street is marked as eighty feet wide, was without power to bind any one. It was a mere nullity, so far as the public easements were concerned. Where such authorities proceed without authority, no estoppel can arise. *Taylor* v. *People*, 66 Ill. 322.

It is only when such acts have induced persons to rely on them, and it would be a clear denial of justice to a meritorious claimant, that an estoppel can be allowed against the public. *Chicago et al.* v. *Wright*, 69 Ill. 328.

Mr. R. F. WINGATE, for the appellee:

The re-survey of the town estopped the public from claiming that Water street, in extent, differed from the Ludwig survey and plat. Relying upon this plat showing the width of the street, complainant took his lease beyond the street. *Gentleman* v. *Soule*, 32 Ill. 271; *Chicago* v. *Wright*, 69 id. 328.

When a line is drawn along the limits of a street, the legal consequence is that the ground between such limit and the water's edge is reserved by the proprietors, unless the contrary is shown. *Barclay* v. *Howell*, 6 Pet. 398.

Purchasers of lots on Water street may have paid a higher price because they would always have an open front toward the river, but they took by their purchase no right to control the land of the proprietors on the river. *McLaughlin* v. *Stevens*, 18 Ohio, 94. The mere circumstance that the river flowed by the town, raises no presumption that any ground formed between it and the town plat was dedicated as a wharf or public landing. *Cowles* v. *Gray*, 14 Iowa, 1.

The town was not incorporated until 1873–4. Therefore from the passage of the act vacating the plat, in 1845, the fee to the streets and alleys was vested in the State, which

then, by that act, relinquished that fee, and revested it in the original grantors. *Waugh* v. *Leech*, 28 Ill. 488; 24 id. 228.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The principal inquiry which arises in this case, as we view it, is as to the extent of Water street, in the town of Brooklyn, as it was originally laid out and platted—whether the western boundary of that street was the Mississippi river, or a straight north and south line, distant eighty feet west from the front and west tier of blocks in the town. The complainant contends that the latter is the western boundary line of the street, and that this is conclusively determined to be so from the statement on the plat of eighty feet as the width of the street.

Under the circumstances appearing in this case, we can not regard this mention on the plat of the width of the street as fixing the western boundary of Water street to be a line eighty feet west from the western line of the town lots. Here is a town laid out upon the bank of a navigable river, with Water street in front of the town, between it and the river, and the idea of the street not extending to the river seems preposterous. Of what use to the proprietors would be the reservation to them of anything between the street and the river, and what a lessening of the value of a town site upon a navigable stream would be the absence of a public landing? It must be supposed that such a town is laid out with reference to the use and enjoyment of the river. A public landing would be viewed as a thing of prime interest, which would be an element of value pertaining to every town lot which was to be sold. As was said by this court in a similar case,— *Godfrey* v. *The City of Alton*, 12 Ill. 29: "This stream is a public highway. In contact with this another easement is granted, and the *very location of it* shows it was designed for the purpose of lading and unlading freight and landing passengers from the water communication, as much as the laying out of an interior street would show it was designed for

the use of travelers by land." The western line of Water street, as marked upon the original plat, is not a straight line, but an irregular, wavy line, denoting, as we take it, the meandering of the river, and thus indicating the river to be the boundary. The express reservation, on the plat, of the exclusive right to all ferry privileges, indicates the understanding of the proprietors that Water street extended to the river. We have the express testimony of the civil engineer who laid out the town under the supervision of two of the proprietors, who visited the ground with him and designated the work to be done, that Water street extended from the front of the town to the bank of the river, and followed the course of the river from north to south,—that all the land west, extending westwardly from the front of the blocks fronting towards the river, was considered Water street, whatever that might be. We can have no doubt, from all that appears in the case, that the western boundary of Water street was the Mississippi river. All the meaning that we can ascribe to the designation of eighty feet as the width of the street, is, that that was about the average width of the space between the front tier of blocks and the river.

A point is made upon the subsequent plat made by Ludwig in 1873, upon the incorporation of the village, its adoption and being placed on record by the board of trustees, as estopping the village from claiming Water street to be any greater in extent than it appears to be as marked on that plat. It was the original plat, and the original proprietors that made the dedication. The board of trustees, or Ludwig, had no power to make any dedication, or to subtract from the original dedication. There was no authority of law for the making or recording of this plat of Ludwig. Ludwig was employed only to make a re-survey of the old town. If he misconceived the extent of Water street, and made it to appear less than it in truth was, he would have failed to make an accurate re-survey; but that would not matter—it would be the origi-

nal survey and dedication which would prevail. We can not see in all this any elements for the founding of an estoppel against the village from claiming Water street in its integrity, as originally laid out. The fee of the street, as thus laid out, is held by the corporation for the benefit of the lot owners and the public.

The legislative vacation of the original plat, in 1845, is insisted upon as an annulment of that plat. This might well be, had there been no sale of lots; but at that time many, if not all, the lots had been sold. The right to the use and enjoyment of this Water street for a street and public landing, appertained to these lots as a valuable privilege, and the legislature did not undertake to do the unjust thing of destroying such rights; but the act of vacation contained the express proviso that the act should not interfere with, or prejudice, the rights of any individual or individuals who might have become the purchaser of any lot or lots in the town. The evidence, perhaps, does not show distinctly that all of the lots had then been sold, but it warrants the conclusion that a large number, if not all, had been sold. The interests of these lot owners, by its express terms, are unaffected by the act, and it is through this village corporation that they may be protected and asserted. The legal title to the streets is vested in the corporation, for the use and benefit of the lot owners and the public. It does not matter that the town had no corporate existence at the time the act was passed. If the town has not a corporate existence, the fee in the streets remains in abeyance, subject to vest in the corporation the moment it is created. (*Canal Trustees* v. *Haven*, 11 Ill. 554; *Gebhardt* v. *Reeves*, 75 id. 301.) We must regard this vacating act as inoperative upon any rights here involved.

Finding, as we do, the boundary of Water street to be on the Mississippi river, the street extended to the center of the river. Grants of land bounded on rivers or upon their margins, above tide water, carry the exclusive right and title of

the grantee to the center of the stream, unless the terms of the grant clearly denote the intention to stop at the edge of the river. (*Braxon* v. *Bressler*, 64 Ill. 488, and authorities there cited.) The premises in question, then, were in Water street, of the village of Brooklyn.

It appears from the evidence that Water street was ever regarded by the inhabitants of the village as extending to the river, and so used, with no pretense ever made of any private claim to the contrary, until in 1873, when Mrs. Purdy went upon the river front and fenced a portion of it, claiming title, as her husband says, under deeds from the heirs of Osborn. No deeds were shown in evidence. But supposing there had been shown deeds from Osborn's heirs, they would have conveyed but Osborn's interest, which at most could have been only a one-fifth interest, as one of the five original proprietors. But Osborn left no interest to descend and be conveyed. The acknowledgment by him and recording of the original plat, had all the force of an express grant to convey from him the land embraced by Water street, and vest it in the corporation of the village. (*Canal Trustees* v. *Haven, supra.*) The corporation was the owner in fee of the streets. In *Washington Ice Co.* v. *Shortall*, 101 Ill. 46, we held, ice formed upon a stream of water to belong to the owner of the bed of the stream.

The case presented seems to be that of an intruder upon the public street of a village seeking an injunction against the village authorities to prevent their interference with his operations in cutting and removing ice from the street—that is, a trespasser asking against the legal owner freedom from interruption in the despoilment of the latter's property. We perceive no right in the complainant which may lay claim to the interposition of a court of equity for its protection.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. Justice Mulkey dissenting.