PHIL MITCHELL *et al.* Appellees, *vs.* THE CHICAGO, BUR-
LINGTON AND QUINCY RAILWAY COMPANY, Appellant.

*Opinion filed October 16, 1914—Rehearing denied Dec. 4, 1914.*

1. LIMITATIONS—*it is not essential that conveyances be suffi-
cient to transfer legal title.* In an action of ejectment against a
railroad company to recover a strip of land in a street, claimed by
the plaintiffs as owners in fee of the abutting lots, conveyances
sufficiently identifying the property are admissible in evidence in
support of the defense of the twenty year Statute of Limitations as
showing the defendant's claim of right to possession, and it is not
essential that they be sufficient to transfer legal title.

2. SAME—*title by limitation may be transferred.* If at the time
of an exchange of properties by railroad companies each company
has acquired a title by virtue of the Statute of Limitations such
title may be legally transferred.

3. SAME—*when successive possessions may be tacked to make
one continuous possession.* While one who finds property vacant
cannot, by merely taking possession, have the benefit of the pos-
session of a previous tenant, yet the privity of estate necessary
to make successive possessions a continuous possession may be ef-
fected either by conveyance or by parol agreement or understand-
ing, and if each grantee succeeds to the possession of his grantor
there is such privity between the occupants that their several pos-
sessions are referred to one entry and are regarded as continuous.

4. SAME—*when possession by a railroad is hostile to owner of
fee in the street.* Possession by a railroad company of a strip of
land in a public street is hostile to one who claims, as an abutting
owner, to own the fee to the center of the street, notwithstanding
the railroad company enters by permission of the city and pays the
city for such use, as a right of action for trespass accrues to the
abutting owner at the time of such entry, or he may enjoin the
construction and operation of the railroad until the company has
paid him compensation for the additional servitude.

5. EJECTMENT—*the owner of fee in street may bring ejectment
though he has no right to immediate possession.* While a city may
grant to a steam railroad company the right to lay its tracks along
a public street, yet if the owner of the fee in the street does not
grant such right, or it is not acquired by condemnation, he may
bring his action for the compensation to which he is entitled and re-
cover for all damages, past, present or future, or he or his grantee
may bring ejectment at any time within the Statute of Limitations.
(*Edwardsville Railroad Co.* v. *Sawyer,* 92 Ill. 377, explained.)

FARMER and VICKERS, JJ., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. R. W. OLMSTED, Judge, presiding.

WALKER, INGRAM & SWEENEY, and WILLIAM D. BARGE, (C. M. DAWES, and J. A. CONNELL, of counsel,) for appellant.

J. T. KENWORTHY, and S. R. KENWORTHY, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

This suit in ejectment was begun in the circuit court of Rock Island county by Phil Mitchell, William C. Wadsworth and Mary H. Wadsworth, executors of the will of Philemon L. Mitchell, deceased, against the appellant, the Chicago, Burlington and Quincy Railway Company. The declaration alleged possession of lots 3 and 4 in block 1 in old (or original) town of Stephenson, now the city of Rock Island, and title in fee, and that the defendant entered into possession and unlawfully withheld the possession thereof. The plea was not guilty and the case was tried without a jury. During the trial it appeared that William C. Wadsworth died before the suit was begun, and the appellees, Phil Mitchell and Mary H. Wadsworth, were continued as plaintiffs. Lots 3 and 4 have a frontage of 160 feet on the south side of First avenue, in the city of Rock Island, formerly known as Mississippi, Water or Front street, and there was no evidence that the defendant had interfered with the possession of the lots or claimed any title thereto, but the suit was brought to recover a portion of First avenue of which plaintiffs claimed to own the fee subject to the public easement, on the ground that they had title to the center of the street. There was a street on the west side of lot 4, and the plaintiffs claimed title to the center of that street. The court found the issue for the plaintiffs and

entered judgment in their favor for a part of the avenue 200 feet long east and west, 106½ feet wide on the west end and 88½ feet at the east end, in front of lots 3 and 4 and extending to the center of the other street.

A history of the laying out and platting of the town of Stephenson is contained in the opinion in *Davenport and Rock Island Bridge Railway and Terminal Co.* v. *Johnson,* 188 Ill. 472. That was a suit to enjoin the building of a railroad embankment along the Mississippi river, with railroad tracks thereon in the street, by a corporation which had not obtained, by condemnation or otherwise, any right to appropriate the land for railroad purposes. It was there decided that when the town of Stephenson was laid out and platted the fee of the street remained in the county of Rock Island, and that the owners of lots fronting on the south side of the street owned the fee to the center of the street subject to the public easement, and decrees granting the relief prayed for were affirmed.

The plaintiffs introduced evidence to prove a connected chain of title from the United States to Philemon L. Mitchell, and also evidence of his last will and testament directing the plaintiffs, as executors, to sell and convey his real estate and to distribute the proceeds. Both parties offered evidence of the payment of taxes, the payments proved by the plaintiffs being of taxes on lots 3 and 4 and the payments proved by the defendant being of taxes on the railroad property in the street. Objections were made to the various items of evidence concerning title and payment of taxes, but, on each objection being made, the ruling was reserved and no ruling was afterward made, so that no ruling of court on the admission of evidence can be considered, and the only question before us is whether the competent evidence sustains the judgment. The evidence for the plaintiffs that the taxes had been paid on lots 3 and 4 was incompetent on the issue being tried, because the plaintiffs were not in actual possession of the premises in question

and they were not vacant and unoccupied during the period for which taxes were paid. The évidence of payment of taxes by the defendant was incompetent for want of any color of title to the fee, the paper title being to an easement, merely. No objection to the evidence of record title in the plaintiffs is pointed out in argument except as to a matter of description in one deed, which we do not regard as well founded, and our conclusion is that the plaintiffs proved ownership of the fee in the street adjacent to the lots to the center thereof, covering the portion of the street in controversy. It is not claimed that the plaintiffs could not maintain the suit by virtue of the will if Philemon L. Mitchell owned the fee at the time of his death, in 1895.

The defense made at the trial was, that the action was barred by the Statute of Limitations of twenty years, under the following state of facts: In 1856 the city council of the city of Rock Island passed an ordinance granting to the Rock Island and Peoria Railroad Company permission to construct, maintain and use one railroad track through and along Water street over the premises in question, and in 1857 that corporation entered upon the premises and built its railroad, which has been in operation since that time. That corporation was called, at different times, Rock Island and Peoria Railroad Company and Rock Island and Peoria Railway Company, the words "railroad" and "railway" being used to designate the same corporation. The premises granted by the ordinance were occupied and used for railroad track and railroad purposes by that corporation until 1877, when the entire railroad, branches, tracks, right of way, depot grounds and other lands and property were sold under a decree of the circuit court of the United States for the northern district of Illinois on the foreclosure of mortgages made by the corporation. The sale was approved, and on December 12, 1877, the master in chancery of said court conveyed the property sold to the Rock Island and Peoria Railway Company,—a corporation then recently.

organized. The grantee entered into possession and operated the railroad. On each transfer possession was taken by the purchaser, and the railroad was continuously operated over the premises from the time of the first entry, in 1857, up to the commencement of this suit, on December 21, 1910. The Rock Island and Peoria Railway Company occupied and used the premises and track from the date of the deed to it up to the year 1898, when the defendant acquired the track and premises by an exchange of tracks, as hereinafter stated, and entered into the possession and use thereof. On May 26, 1869, the city council of the city of Rock Island passed an ordinance granting to the Rockford, Rock Island and St. Louis Railroad Company the right to construct, maintain and use double tracks in the street, and also granted the said company grounds for depot and other railway purposes not included in the premises in controversy, for which the railroad company was to pay $200 annually to the city. In 1870 the Rockford, Rock Island and St. Louis Railroad Company entered upon the street and constructed its double tracks, which have been possessed and used ever since that time for railroad purposes. That corporation operated the railroad, and on July 13, 1875, the circuit court of the United States for the northern district of Illinois entered a decree of foreclosure against that corporation with an order of sale of its property by the master in chancery of the court to satisfy the same. The master in chancery made the sale to Heyman Osterburg, trustee for the bondholders, and conveyed the same to him on May 18, 1876. On the same day Osterburg conveyed the railroad and property to the St. Louis, Rock Island and Chicago Railway Company, which leased the railroad to the Chicago, Burlington and Quincy Railroad Company. In 1898 the St. Louis, Rock Island and Chicago Railway Company, and its lessee, the Chicago, Burlington and Quincy Railroad Company, and the Rock Island and Peoria Railway Company, desired to make a trade or transfer of tracks

for their mutual interest and convenience, and agreed that the Rock Island and Peoria Railway Company should transfer to the St. Louis, Rock Island and Chicago Railway Company, and its lessee, the Chicago, Burlington and Quincy Railroad Company, the main track in the street opposite lots 3 and 4, in consideration of which the defendant and its lessor were to turn over and transfer to the other corporation their two local tracks in front of these lots. The city council passed an ordinance for the transfer under a frontage consent signed by one of the executors for the estate and by other property owners, and the main track, for which the right was granted in 1856, was transferred to the Chicago, Burlington and Quincy Railroad Company and its lessor, and the two tracks authorized by the ordinance of 1869 were transferred to the Rock Island and Peoria Railway Company, and possession was taken by the respective parties. On June 1, 1899, the St. Louis, Rock Island and Chicago Railway Company conveyed its railroad, by deed, to the Chicago, Burlington and Quincy Railroad Company, and the latter corporation, on November 20, 1901, executed a lease of the railroad and property for ninety-nine years to the Chicago, Burlington and Quincy Railway Company, the defendant in the suit. On June 11, 1903, the Rock Island and Peoria Railway Company sold and conveyed its railroad and property to the Chicago, Rock Island and Pacific Railway Company.

Objections were made to the various deeds and documents offered by the defendant to prove the several transfers, and there was no ruling by the court on any of them, the ruling each time being reserved and not afterward made. The evidence was competent and the objections without force. The description in each deed and document was sufficient to identify the property, and, regardless of all other questions, they were competent to prove a defense under the Statute of Limitations. It is not essential to such a defense that a conveyance under which

possession is taken shall be sufficient to transfer a legal title.
All that is necessary is to show that the possession is under
a claim of right. The claim need not be a well-founded
one, and a grant, sale or gift of land by parol, accompanied
by actual entry and possession, manifests the intention of
the donee to enter and take as owner and his possession is
adverse. (*Schmidt* v. *Brown,* 226 Ill. 590.) The Rock Is-
land and Peoria Railroad Company in 1857 entered upon
the street and into the open, visible and adverse possession
thereof as against all the world except the city of Rock Is-
land, representing the public right and easement. In 1870
the Rockford, Rock Island and St. Louis Railroad Com-
pany entered upon the street and into the open, visible and
adverse possession thereof except as against the public right,
and constructed its double tracks thereon. The several cor-
porations, by virtue of the grants to them, entered succes-
sively into the possession of the property, and have dur-
ing the respective periods since the first entry been in the
actual, open and visible occupation of the premises. The
several deeds were sufficient to distinguish the railroad and
tracks from all others, and parol evidence was admissible to
identify and connect, with the transfers, the railroad prop-
erty conveyed. *Lake Shore and Michigan Southern Rail-
way Co.* v. *Pittsburg, Ft. Wayne and Chicago Railway Co.*
71 Ill. 38; *Waggoner* v. *Wabash Railroad Co.* 185 id. 154.

The principal argument against the defense is, that in
1898, by the exchange and transfer of tracks, all rights
of the respective parties were lost and that the limitation
period must commence from such transfer of right and pos-
session. At the time of the transfer the Statute of Limita-
tions had run in favor of each of the railroad corporations,
so that each had acquired title by limitation which might be
legally transferred to another, but if it had been necessary
under the statute, the successive possessions might be tacked
so as to make one continuous possession. There must be
privity of estate to make the possession continuous, and one

finding property vacant cannot, by taking possession, have
the benefit of a possession of a previous claimant, but the
privity necessary to constitute successive possessions a con-
tinuous possession may be effected either by conveyance or
parol agreement or understanding. If each grantee suc-
ceeds to the possession of his grantor there is such privity
between the occupants that their several possessions are re-
ferred to one entry and are regarded as continuous. *Weber*
v. *Anderson,* 73 Ill. 439; *Faloon* v. *Simshauser,* 130 id.
649; *Ely* v. *Brown,* 183 id. 575; *Kepley* v. *Scully,* 185
id. 52.

It is further contended that the possession was never
adverse to the owners of the fee because the railroad com-
panies entered by permission of the city and in recognition
of the public easement. The possession must be actual, vis-
ible and notorious, and the possession of the railroad com-
panies answered this condition. It was hostile and adverse
to anyone claiming the fee in the street and to all titles or
claims other than the title granted by the city of Rock Is-
land. The owner of the fee could have brought his action
of trespass against each company at the time of its entry,
or could have had the aid of a court of equity to prevent
the occupation of the street until his title should be ac-
quired. The possession which would authorize an action of
trespass by the owner of the fee was necessarily adverse to
him, and it is entirely immaterial to his right whether any
payment was to be made to the city or whether it was to
be paid annually. The laying of a track for a steam rail-
road in a public street the fee of which is in an abutting
owner is an additional servitude for which the owner of
the fee is entitled to compensation, and such owner may
maintain trespass or enjoin the railroad company from con-
structing or operating its road without first settling with
him, even though the municipal authorities have granted
permission to construct and operate the road on the street.
(*Bond* v. *Pennsylvania Co.* 171 Ill. 508; *Pennsylvania Co.*

v.·*Bond,* 202 id. 95; *Rock Island and Peoria Railway Co.* v. *Johnson,* 204 id. 488; *Wilder* v. *Aurora Traction Co.* 216 id. 493; *Spalding* v. *Macomb and Western Illinois Railway Co.* 225 id. 585; *Davenport Bridge Railway and Terminal Co.* v. *Johnson, supra.*) A right of action, therefore, accrued to the owner of lots 3 and 4 at the date of each original entry, and if the plaintiffs can maintain ejectment now the owner could have maintained it then.

It is urged against the judgment that the plaintiffs could not maintain ejectment for the premises located in the street because they had no immediate right of possession, but this court has held the contrary. In the case of *Postal Telegraph-Cable Co.* v. *Eaton,* 170 Ill. 513, the corporation had constructed its telegraph line along the public highway without obtaining a right of way by consent of the owner of the fee or by condemnation proceedings, and it was decided that the owner of the fee could maintain ejectment to exclude the corporation from the highway until the right of way was obtained. That decision was on the ground that the telegraph line was an additional burden upon the fee, and the same rule must apply to a steam railroad on the same ground. The public use is for only customary modes of travel, and while the city may grant the right to a railroad company to lay its track along or across a street by virtue of the statute, if the owner of the fee does not grant the right or it is not acquired by condemnation, the railroad company has no right, as against him, to occupy the street. He may bring his action for the compensation to which he is entitled and recover for all damages, past, present or future. (*Indianapolis, Bloomington and Western Railroad Co.* v. *Hartley,* 67 Ill. 439; *Chicago and Alton Railroad Co.* v. *Maher,* 91 id. 312; *Chicago and Eastern Illinois Railroad Co.* v. *Loeb,* 118 id. 203; *Penn Mutual Life Ins. Co.* v. *Heiss,* 141 id. 35; *Galt* v. *Chicago and Northwestern Railway Co.* 157 id. 125.) The owner of the fee, or his grantee, may bring a suit in ejectment at

any time within the Statute of Limitations. In the case of *Edwardsville Railroad Co.* v. *Sawyer,* 92 Ill. 377, where a railroad track was laid in a public highway, it appears that the controversy at the trial was whether there was a public highway. The plaintiff testified that the county road upon which the railroad track was located was laid out without his consent, that he never received any pay for the land taken by the road, and at divers times made objections to the laying out of the road. He had recognized the road, and the court said it must be taken to be a legally located road, and it would be presumed that the defendant was using the road by consent of the public authorities. What was decided was, that the privilege of laying a track in a public road was a matter between the road authorities and the railroad company, and their action could not be questioned by private individuals. That case has been cited in *Mapes* v. *Vandalia Railroad Co.* 238 Ill. 142, as sustaining the proposition that our decisions are adverse to a claim that ejectment will not lie against a railroad company for a portion of its right of way, and it was cited, together with *Postal Telegraph-Cable Co.* v. *Eaton, supra,* in *Chicago, Peoria and St. Louis Railway Co.* v. *Vaughn,* 206 Ill. 234, to the proposition that ejectment will lie by an owner against a railway corporation which has taken his land and used it but has not condemned it in proceedings instituted for that purpose. Our decisions are in harmony with the general rule stated in Elliott on Roads and Streets, (sec. 814,) that an abutter may maintain ejectment where a railroad is constructed without authority upon a highway of which he owns the fee.

The finding of the court was contrary to the evidence and the judgment is not supported by it. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

FARMER and VICKERS, JJ., dissenting.