# THE CITY OF PEORIA

## v.

## ROBERT JOHNSTON.

1.  DEDICATION — *for a public highway — what constitutes.*  The owner of
land at the terminus of a street in a town, laid off an addition to the town,
extending from its original limits along on one side of a public road which
run through his land, and was a continuation of the street, in the same
general direction, but not-so wide as the street.  He made a plat of the
addition, which was duly recorded, and on which were lines indicating an
extension of the street, but specifying no particular width therefor.  The
other streets in the addition were made of the same width with correspond-
ing streets in the original town.  In the year after laying out the addition,
he sold and conveyed that portion of his land which lay on the side of the
street first mentioned, opposite the addition, his grantee taking immediate
possession and erecting a fence on the line of the original highway.  This
was in 1842, and the city, for a period of twenty-eight years, acquiesced in
such assertion of ownership and continued occupancy of the purchaser and
his grantees, in 1847 recognizing by ordinance the fence as the true line of
the street, and again in 1857 appointing commissioners to assess the
damages for condemning a strip of land inside this fence, which were
assessed but never paid.  After the lapse of twenty-eight years from the
time such purchaser took possession, the city claimed the right to appro-
priate a strip of his land inside the fence for the purposes of the street,
alleging a dedication thereof on the plat of the addition, made by the
original owner: *Held,* the circumstances connected with the laying off the
addition and making of the plat left the question of dedication in doubt;
but the doubt was resolved against the city, in view of the additional cir-
cumstances that individual ownership was asserted and exclusive possession
taken the first year after the alleged dedication, and that the city had for
twenty-eight years both positively recognized and passively acquiesced in
such a construction of the plat as excluded the idea of dedication.

2.  HIGHWAY — *abandonment thereof.*  A city claimed the right to appro-
priate a strip of land inside the inclosure of an individual, as a part of a
road adjacent thereto, on the ground that the land so claimed was covered
by the plat of the road as established by the county; but it appeared that
the road, as it was actually staked by the viewers, was laid out upon the
line on which the fence of the inclosure was afterward erected, and the
road as so staked and fenced had been the recognized highway for more
than twenty years, having the full width called for by the survey: *Held,*

| 56 | 45 |
|---|---|
| 124 | 161 |
| 56 | 45 |
| 128 | 66 |
| 56 | 45 |
| 142 | 116 |
| 143 | 155 |
| 56 | 45 |
| 160 | 16 |
| 161 | 215 |
| 56 | 45 |
| 163 | 111 |
| 56 | 45 |
| 66a | 387 |
| 66a | 615 |
| 56 | 45 |
| 166 | 41 |
| 166 | 525 |
| 56 | 45 |
| 72a | 595 |
| 56 | 45 |
| 177 | 109 |
| 56 | 45 |
| 179 | 148 |
| 56 | 45 |
| 182 | 198 |
| 182 | 214 |
| 56 | 45 |
| 186 | 4398 |
| 56 | 45 |
| 96a | 4226 |
| 56 | 45 |
| 215 | 3494 |
| 115a | 5486 |

the case fell within the principle of the rule, that the public lose their right to a highway where they have abandoned it and accepted another in its stead for such a length of time, and under such circumstances, as to give them a title to the substituted road.

3. SAME — *non-user* — *presumption of extinguishment.* Where ground upon which a highway was laid out, or which was dedicated for that purpose, has been in the open and exclusive adverse possession of the owner of the land for twenty years, and a complete non-user of the easement by the public during that time, an extinguishment will be presumed.

4. CHANCERY — *jurisdiction* — *injunction.* Where a city undertakes, under color of its chartered powers, to take possession of land to which it has no right, on the pretense that it has been dedicated as a public street, thereby inflicting upon the owner a permanent and continuing injury, the proper remedy is by injunction.

5. And in such case the jurisdiction of a court of chancery is not limited merely to the granting of an injunction until the rights of the parties can be settled at law, but, having acquired jurisdiction for the purpose of an injunction, the court may retain the case and administer complete relief.

APPEAL from the Circuit Court of Peoria county ; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

The opinion states the case.

Messrs. WEAD & JACK, for the appellant.

On the question whether the city was estopped from claiming that the land was dedicated for a public street, by reason of having taken steps to condemn the ground, cited *Owen* v. *Bartholomew*, 9 Pick. 520; *Jackson* v. *Cary*, 16 Johns. 302; *Farrel* v. *Higley*, Hill & Denio (N. Y.), 9. As to the rule in regard to estoppels, *Freeman* v. *Cooke*, 2 Wels. H. & G. Rep. 653 ; *Brewster* v. *Stryker*, 2 Comst. 19; *Hazelton* v. *Batchelder*, 44 N. H. 40.

However well the acts pleaded by way of estoppel in this case might avail as between individuals acting in their private capacity, the rule is different when applied to their acts as trustees of the public. *State* v. *Graves*, 19 Md. 351; *McCracken* v. *San Francisco*, 16 Cal. 591; *Ex parte Mayor, etc., of Albany*, 23 Wend. 277. Nor is the city estopped by

any admission of its officers or municipal records. *McFarlane* v. *Kerr*, 10 Bosw. 249. Neither can the city forfeit its rights by *non-user.* *City of Alton* v. *Illinois Trans. Co.*, 12 Ill. 38; *Waugh* v. *Leigh*, 18 id. 491; *Trustees* v. *Haven*, 11 id. 555; *Hunter* v. *Middleton*, 13 id. 50; *New Orleans* v. *United States*, 10 Pet. 662, and cases there cited. Laches is not imputable to the public. *Madison County* v. *Bartlett*, 1 Scam. 67; *State Bank of Ill.* v. *Brown*, id. 107; *Belleville* v. *Stookey*, 23 Ill. 444; *Waugh* v. *Leech*, 28 id. 491.

Chancery had no jurisdiction to enjoin a mere trespass. Danl. Ch. Pr. 1742; *Coulson* v. *White*, 3 Atk. 21; 2 Story's Eq. Jur., §§ 925, 926; *Bolster* v. *Catterlin*, 10 Ind. 117; *Jerome* v. *Ross*, 7 Johns. Ch. 334; and generally on this subject, *Spooner* v. *McConnell*, 1 McLean, 328; *Mayor, etc., Rochester* v. *Curtiss*, 1 Clarke, 336; *Waldron* v. *Marsh*, 5 Cal. 119; *Rhea* v. *Forsyth*, 36 Penn. St. 503; *King* v. *McCully*, 38 id. 76; *Coe* v. *Lake Co.*, 37 N. H.; *Storm* v. *Mann*, 4 Johns. Ch. 21; *Stewart* v. *Chew*, 3 Bland, 440; Willard's Eq. Jur. 382; *Hart* v. *Mayor of Albany*, 3 Paige, 213; *Van Bergen* v. *Van Bergen*, 3 Johns. Ch. 282; *Dana* v. *Valentine*, 5 Metc. 8; *Nevitt* v. *Gillespie*, 1 How. (Miss.) 108; *Dunning* v. *City of Peoria*, 40 Ill. 480.

Messrs. McCoy & STEVENS, for the appellee.

The question of dedication is one of intention, but that intention must be clear and unequivocal. *Rees* v. *City of Chicago*, 38 Ill. 336; *Connor* v. *Pres. and Trustees, New Albany*, 1 Blackf. 43; *Ketchum* v. *The State*, 12 Ind. 620; *Haynes* v. *Thomas*, 7 id. 38; *City of Logansport* v. *Dunn*, 8 id. 378; 2 Smith's Lead. Cas. 234, 235; in the case of *Rees* v. *City of Chicago*, 38 Ill. 336. On the question of abandonment by the city, see *Town of Lewiston* v. *Proctor*, 27 id. 418; 3 Kent's Com. 600, 601; *Champlin* v. *Morgan*, 20 Ill. 182.

The court of chancery had jurisdiction. *Smith* v. *Bangs*,

15 Ill. 402; *The Mohawk and Hudson R. R. R. Co.* v. *Archer et al.*, 6 Paige's Ch. 83; *Green* v. *Oakes*, 17 Ill. 249; *Belknap* v. *Belknap*, 2 Johns. Ch. 463; *Baldwin* v. *City of Buffalo*, 29 Barb. 896; *Cenvou* v. *Mayer*, 25 id. 513; Hill'd on Injunc. (2d ed.) 443; *Carpenter* v. *Gwynn*, 35 Barb. 404; *Holdane* v. *Trus. Village of Coldwater*, 21 N. Y. 474.

Mr. Chief Justice Lawrence delivered the opinion of the Court:

This was a bill in chancery brought by Johnston against the city of Peoria, to enjoin it from taking a strip of land about sixteen feet wide, now forming a part of the inclosure between complainant's house and Main street, in said city, and from making it a part of the street. The city answered, and a replication having been filed and proof taken, the cause came on to a hearing and the court made the injunction perpetual. The strip of land in question is situated in part on the south-east 4, 8 north, 8 east, and in part on the south-west quarter of the same section, and the claim made by the city to the land on each quarter rests upon different grounds.

Main street, it appears, in 1841, ran from the river in a north-west direction to the south line of section 4, having a width of one hundred feet. At that time William Hale owned the south-east of 4, of which a small portion at the south-west corner crossed the line of Main street. In that year he laid out an addition to the city, on so much of the south-east quarter as lay on the north-east side of the line of Main street, and on the 31st of May acknowledged his plat, which was duly recorded. He indicated the course of Main street on his plat but did not fix its width. The other streets in his addition he made of the same width with the corresponding streets in the original town. In 1842, Hale deeded to Hamlin all of the south-east 4 lying south-west of Main street, being the corner above referred to, and Hamlin at once took possession and built the fence, where it has since stood and now stands.

At the time Hale laid out his addition, although Main street proper terminated at the south line of section 4, yet a public highway had been laid out by the county authorities and for several years had been opened and traveled, which was a continuation of Main street, but only sixty-six feet wide.

The only ground upon which the city now claims the right to so much of complainant's inclosure as lies on the south-east of section 4, is that it was dedicated by Hale. The argument is, that, as he caused Main street to be laid down on his plat, and as Main street, from the river to this point, was one hundred feet wide, and as he made the other streets in his addition of the same width with the corresponding streets in the town, he must be presumed to have intended Main street should have the same width, although he indicated no particular width on his plat, but merely showed its line or locality.

If no highway had been established in continuation of Main street when Hale platted his addition, the argument would certainly have great force. But a highway, which was such a continuation, was already there, and extended in a northwesterly direction sixty-six feet in width. This highway was not disturbed by his laying off an addition on one side of it, and we do not perceive how it can be confidently said whether he intended this highway, so far as he owned the land on each side of it, should be of the width of that portion of the highway which extended into the country, or of that portion which extended toward the river. The probability is, he had no settled purpose in regard to this matter, and left it open to be decided in the future, contenting himself for the time being with indicating on his plat that a highway, in the line of Main street, bordered his addition on the south-west side.

Now, as dedication is a question of intention, and the existence of such intention must be shown with reasonable clearness, we should have much difficulty, if the proof stopped here, in affirming the dedication to have been established.

But, conceding the question to be in some doubt, so far as depends upon this evidence, the course of subsequent events

4 — 56TH ILL.

has been such as must compel us to resolve all these doubts against the city, on the ground that, for twenty-eight years prior to the commencement of this suit, the grantees of Hale have been in exclusive and undisturbed possession of the premises, improving and cultivating them as a part of the ornamental grounds lying between the house and the street, this possession commencing the year after Hale made his plat. But there has been, on the part of the city, something more than mere acquiescence. In 1847, the city council passed an ordinance making the line of Main street, on the south-west side, as far down as Perry street, to conform to the fence erected by the grantee of Hale, thus recognizing his fence as the true line of the street. Again, in 1857, the city council appointed commissioners to assess the damages for condemning this land, and they were assessed, though never paid.

So far as relates to this portion of the premises in controversy, we should be inclined to hold, that, when the acts which are relied upon to show the dedication originally are of such doubtful character as in the present case, the additional circumstance that individual ownership was asserted, and exclusive possession taken the first year after the alleged dedication, and that the city has for twenty-eight years both positively recognized and passively acquiesced in such a construction of the plat as excludes the idea of dedication, during which period the premises have several times been sold, must be regarded as settling against the claims of the city whatever doubts attach to the evidence of dedication in the first instance. We may well adopt that construction of the plat which the parties themselves have acted upon for twenty-eight years.

Admitting, however, there was a dedication, there is another view of this case, arising on the question of abandonment or non-user, which we will consider, after stating the facts concerning the other portion of the premises in controversy.

The claim made by the city to that portion of the strip of land, situate on the south-west of section 4, rests on the survey and plat of a road made by the county in 1839. It is

claimed that the plat of the road on file in the county clerk's office covers the premises in question.   It is, however, proved that the road, as it was actually staked by the viewers, was laid out so that the south-west side was in a line with the fence as it now stands in front of complainant's premises.   The fence in front of this part of the premises was built the same year, and there it has stood to the present time.   The road as staked by the viewers, and soon afterward fenced by the then owner of the premises in controversy, has been the recognized highway to the present time, having the full width of sixty-six feet called for by the survey.   The case, then, as to this portion of the premises falls within the principle recognized in *Champlin* v. *Morgan*, 20 Ill. 182, and *Town of Lewiston* v. *Proctor*, 27 id. 418, that the public loses its right to a highway where it has abandoned it and accepted another in its stead for such a length of time and under such circumstances as to give it a title to the substituted road.

But, independently of this principle, conceding this highway was laid out as claimed by appellant, and conceding there was an intention to dedicate the premises on the south-east of section 4, we are of opinion that the adverse possession of the appellee, open and exclusive as it has been, and the complete non-user of the easement by the public for more than twenty years, are a sufficient answer to the claim now made by the city.   It is said in Kent (vol. 3, marg. page 448, eleventh edition) that mere non-user for twenty years affords a presumption of extinguishment, though not a very strong one, in a case unaided by circumstances, but if there has been, in the mean time, some act done by the owner of the land charged with the easement inconsistent with or adverse to the right, an extinguishment will be presumed.   The cases quoted in the notes fully sustain the doctrine of the text and some of them state it more strongly.   See *Corning* v. *Gould*, 16 Wend. 531, where the law on this subject is fully reviewed; *Wright* v. *Freeman*, 5 Harr. & Johns. 477; *Emerson* v. *Wiley*, 10 Pick. 310; *Yakle* v. *Nace*, 2 Whart. 123; *Knight* v. *Heaton*, 22

Vt. 480. A case can hardly be presented in which the non-user on the part of the public, and the acts of the private claimant inconsistent with the easement, could be more complete than in the present.

The case of *The City of Alton* v. *Illinois Transportation Co.*, 12 Ill. 38, cited by counsel for appellant, only held that our peculiar seven years' statute of limitation did not apply to the case then before the court, and we are aware of no decision by this court in conflict with the foregoing principle. It is reasonable in itself and fully sustained by the authorities.

It is urged, however, by counsel for appellant, that this is not a proper case for chancery jurisdiction, or that, in any event, the court should merely have enjoined the city until the rights of the parties could have been settled at law.

As to the first point, it is only necessary to say that the complainant was seeking, not merely to enjoin a trespass, but to restrain the city, under color of its chartered powers, from taking absolute possession of property to which it had no right, and inflicting a permanent and continuing injury upon the complainant. In such cases, injunction is a proper remedy. *Smith* v. *Bangs*, 15 Ill. 402.

The answer to the second objection is, that the complainant, having been compelled to come into chancery as the only means by which he could secure himself against the threatened lawless acts of the city, had a right to ask the court to grant him complete relief, and the court, having once acquired jurisdiction on its chancery side, very properly went on to administer complete relief. The city cannot complain. She could have brought her action of ejectment in the first instance, and tried the title at law if she desired. She pursued a different course, and one which compelled the complainant to come to chancery for aid, and she cannot now be permitted to complain that this court has administered complete relief. The court was obliged to hear the entire case in order to determine whether any relief should be given, and, having heard it, why send the parties to a court of law to have the case reheard?

There is little controversy as to the actual facts, and the court acted very properly in settling the rights of the parties.

*Decree affirmed.*