THE PEOPLE *ex rel.* James M. Beardsley II.

*v.*

THE CITY OF ROCK ISLAND *et al.*

*Opinion filed April 17, 1905—Rehearing denied June 13, 1905.*

1. MANDAMUS—*mandamus is not a writ of right.* The granting of a writ of *mandamus* is discretionary with the court, in view of all the existing facts and with due regard to the consequences which will result.

2. SAME—*when private citizen cannot enforce public right.* A person may, in his capacity as a private citizen, institute a proceeding for *mandamus* for the protection of a public right, but he is not entitled to the writ if the public right has been lost or the public is estopped to assert it.

3. MUNICIPAL CORPORATIONS—*when city may lose rights by non-user.* While a municipal corporation does not lose its rights in a public street by non-user alone, yet if there are other circumstances which are sufficient, with such non-user, to raise the presumption of abandonment, such rights will be deemed lost.

4. SAME—*when doctrine of equitable estoppel applies to a municipal corporation.* Where a party, acting in good faith under the affirmative action of a city, has made such lasting and valuable improvements in a street that it would be highly inequitable and unjust to destroy the rights so acquired, the doctrine of equitable estoppel will be applied.

5. SAME—*when the public is estopped to assert right.* Where a city, for a valuable consideration, grants to a railroad company the right to erect structures and lay tracks on a portion of a public street constituting the river front, leaving a portion of the street of ample width for unobstructed travel, and the company incurs great expense in making permanent improvements in reliance on the grant, the public, which has apparently acquiesced in such action for many years, is estopped to assert the right to have such improvements removed.

APPEAL from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding.

J. T. KENWORTHY, and S. R. KENWORTHY, for appellant.

W. L. LUDOLPH, City Attorney, and SWEENEY & WALKER, (LANE & WATERMAN, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Rock Island county denying the petition of James M. Beardsley II for a writ of *mandamus* commanding the appellees, the city of Rock Island and the Davenport, Rock Island and Northwestern Railway Company, to remove a depot building, freight building and freight platform from Mississippi street, in the city of Rock Island, and to prevent the use of said street for a railroad yard.

The petition alleged that the relator was a citizen and tax-payer of the city of Rock Island; that in the year 1835 the town of Stevenson, which is now the city of Rock Island, was laid out, with a street called Mississippi street extending from the north tier of blocks to the center of the Mississippi river, which street is now called First avenue; that said street was dedicated as such by a common law dedication and was of the width of about 1300 feet; that at the time of filing the petition there was erected in said street, about 150 feet north of the south line thereof, a railway depot building, and commencing at the west end of the said building there was a railway freight house and a freight platform extending west of the freight house, with a railroad yard north of the same for storage, standing, loading and unloading of freight cars; that said street, except the south 80 feet thereof, was obstructed for railroad uses with the knowledge, consent, procurement and approval of the city of Rock Island; that said city, by an ordinance passed September 17, 1900, attempted to give the right to said railway company to construct and maintain said depot on said premises; that petitioner was the owner of a lot fronting on Mississippi street, and that he caused demand in writing to be served upon the city to cause said buildings and platform to be removed and prevent the railroad company from using a part of the public street for a railroad yard.

The city and the railway company filed separate answers, which were substantially identical. They admitted that the commissioners of the county of Rock Island made a map or plat of the town of Stevenson, which is now included in the city of Rock Island; that Mississippi street, or First avenue, as it is now called, has been for fifty years a public street, and that the buildings and platform described in the petition were located as therein alleged. The answers contained the following denials of averments in the petition: First, that the depot building, freight house and freight platform were situated in Mississippi street; second, that the relator served a notice and demand for the removal of said depot, freight house and freight platform; third, that the plat annexed to the petition as an exhibit was a true map of the town of Stevenson; and fourth, that the relator was a citizen and taxpayer of the city of Rock Island. To those portions of the answer four replications were filed, forming issues of fact which were submitted to a jury. The verdict of the jury on said issues of fact was against the defendants, and as the evidence produced on the trial was not preserved in the record by a bill of exceptions, no question is or can be raised as to the conclusive nature of the verdict. The answers denied that the ordinance of 1900 was intended to or purported to, or did in fact, confer upon the railway company the right to permanently occupy the premises in question for its sole and private use to the exclusion of the public, and we do not regard the ordinance, a copy of which is annexed to the petition, as granting exclusive rights of that character, although the grant is a permanent one.

The answers contained averments of many acts designed to raise an estoppel against the city to compel the removal of the buildings in question. They contained a lengthy history of the premises and the uses to which they have been applied under grants and ordinances of the city, the making of very extensive and valuable improvements and the expenditure of large sums of money in good faith and in reliance upon such

grants and ordinances.   None of the facts so alleged were
denied by replication, and they were therefore admitted on
the record by the pleadings.   It is not practicable or neces-
sary to recite at length the facts so admitted.   In brief they
are as follows: The county commissioners, in platting the
town of Stevenson, marked the land along the Mississippi
river, varying in width from 90 to 260 feet at different
places, as Mississippi street.   All commerce was then car-
ried on by boats upon the Mississippi river.   The river bank
was used for a landing, and wharf-boats and wharf-boat
structures were located along the shore.   The south 80 feet
of the street in front of the lots and blocks has always re-
mained unobstructed, and has been used by the public for
travel and the ordinary uses of a street.   The public have
never used for such ordinary public travel the space north of
the said 80 feet in width, but it remained an open space, on
which there was at one time a market house, and there was
also a lumber yard for loading and unloading lumber trans-
ported upon the river and for piling the same to be sold in
trade.   When a railroad was first built in the city, in 1856,
an ordinance was passed giving it the right to construct its
track on the part of the street 80 feet north of the south line.
That railway company entered upon the ground and built a
trestlework in the river for a long distance, and afterwards
filled the same, making an embankment and creating new
land out of the river bed.   The right to lay an additional
track in connection with the handling of coal was granted in
1867, with provisions as to wharfage charges, discriminat-
ing between steamboats handling coal and those not doing a
coal business.   In 1869 the right to lay tracks was granted
to another railroad company for an annual rental to be paid
to the city, and that company made ground of considerable
width in the bed of the river for the purpose of laying tracks
and transacting business with steamboats.   In 1878 the right
was granted to a mining company to construct a railroad
track and chutes for dumping coal on boats and barges.

In 1879 another grant was made, and in 1895 there was a grant to a terminal company, of which the defendant railway company is successor. These grants included the use of the premises for depot grounds, and were made with a view to the commercial interests of the city and the interchange of business by rail and river. Under these grants, and relying thereon in good faith, the defendant railway company and its predecessors in right and title expended more than $400,000 in filling in the bed of the river, increasing the width of the open space called Mississippi street from its original width of 90 feet on the west to 230 feet, and from 110 feet on the east to 270 feet. The additional ground was solely made by artificial means and the expenditure of large sums of money under the ordinances. The river front was also riprapped, paved and otherwise improved. One grant was made in consideration of the payment of $5000, which was paid. During all this period neither the relator nor any other person made any objection whatever to the grants or to the use of the premises as they are now used for railway tracks and public depot grounds, and the public have never been excluded except so far as the necessary buildings have been an obstruction to passage across the premises. The relator filed a bill for an injunction against the predecessor of the defendant railway company to prevent filling along the river shore or using the premises for railroad purposes, and was paid $900 for the right to make such filling and to make use of the rights granted by the city, and he executed a deed conveying such rights. The railway company also paid to other owners of lots abutting on the street sums aggregating $45,000 for conveyances of rights to use and occupy the premises for railroad purposes. The depot, freight building and platform are situated about 150 north of the south line of the street, and the 80 feet in width which has never been obstructed is ample for all the purposes of a street.

In the case of *Davenport Bridge Railway Co.* v. *Johnson,* 188 Ill. 472, we determined, following the decision in *Vil-*

*lage of Brooklyn* v. *Smith,* 104 Ill. 429, that the original ded-
ication of Mississippi street extended to the north line of the
tract of land upon which the town of Stevenson was laid out,
which was the center of the Mississippi river.   That decision
was re-affirmed in *Rock Island and Peoria Railway Co.* v.
*Johnson,* 204 Ill. 488.   The owners of lots abutting on the
street took title to the center of the street, burdened with the
public easement, and those cases involved the rights of such
owners to enjoin the imposition of an additional servitude
on the fee until a grant should have been obtained or their
interests should be condemned and paid for.   In this case it is
admitted by the pleadings that the relator was paid for and
granted to the railway company the right to use the premises
for railroad purposes, so that he has no personal or individ-
ual right to the writ, and can only enforce the public right
as a citizen of the city of Rock Island.   His interest in this
suit is only that which any citizen has in having the public
right protected and enforced.   In his capacity as a citizen he
is entitled to become the relator and institute the proceeding
for the protection of the public right, if it exists.   (*People
ex rel.* v. *Harris,* 203 Ill. 272.)   If, however, the public right
has been lost or the public are estopped he cannot succeed in
his action.   The buildings and platform are within the limits
of a public street, and the material question is whether the
city is estopped to require their removal.   In determining that
question all the facts as alleged and admitted are to be con-
sidered, and it is to be remembered that a writ of *mandamus*
is not a writ of right.   The granting of the writ is discre-
tionary with the court in view of all the existing facts and
with due regard to the consequences which will result.   *Peo-
ple* v. *Ketchum,* 72 Ill. 212; *People* v. *Board of Supervisors,*
185 id. 288.

   While municipal corporations are subject to statutes of
limitation concerning private rights, they are not within such
statutes with respect to the enforcement of public rights.   The
non-user of an easement by the public for any length of time

will not bar the public right under statutes of limitation, but it has been held that a city may lose its rights by non-user if there are other circumstances which are sufficient, with the non-user, to raise a presumption of abandonment. (*City of Peoria* v. *Johnston,* 56 Ill. 45; *Village of Auburn* v. *Goodwin,* 128 id. 57; *Jordan* v. *City of Chenoa,* 166 id. 530; *City of Carlinville* v. *Castle,* 177 id. 105.) In this case the circumstances would not justify a presumption that the city has abandoned the control of the premises as public grounds, but by a long course of conduct and for valuable considerations, and without objection from any person, the city has granted the right to use them for railroad purposes. It is not a case where a city or its authorities have done no affirmative act to mislead a party, or where the occupation and use have been wrongful and without apparent justification. It may be conceded that in such a case the doctrine of equitable estoppel cannot be applied. Any one encroaching upon an ordinary public street must know that the city holds it in trust for the public and cannot alienate it or divert it to an improper use. But here was a condition out of the ordinary. The land included in the street originally was an irregular space varying from 90 feet to 260 feet in width, and the remainder of the land to the center of the river was subject to the easement of public navigation. The river was a highway, and when the town was laid out all commerce was carried on upon the river. The street was laid out in connection with the river, and was plainly intended for the purpose of a public landing as well as for a street. (*Godfrey* v. *City of Alton,* 12 Ill. 29.) It was designed for the purpose of loading and unloading freight and landing passengers from the river, and for use in connection with navigation. The south 80 feet was always reserved for the ordinary purposes of a street, while the remainder along the river shore was used for market purposes and a market house, and for loading and unloading freight and unloading and piling lumber. For nearly fifty years it has also been used for railroad purposes, includ-

ing depot uses, under express grants from the city, for some of which it received direct pecuniary remuneration. For very many years,—much longer than the longest period of any statute of limitations,—that part of the street constituting the landing and outside of the traveled way has been occupied for the public use of railroad tracks and depot grounds.

It has frequently been decided that the doctrine of estoppel *in pais* is applicable to municipal corporations, but that they will be estopped or not, as justice and right may require. There may be cases where, under all the circumstances, to assert a public right would be to encourage and promote a fraud. Where a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel will be applied. The hardships that would result from a contrary holding, and the necessity of raising an estoppel in particular cases to prevent fraud and injustice, have induced the establishment of the rule, and it has been several times said that there is neither danger to the public nor injustice in the application of the doctrine. In the exercise of proper diligence the public authorities may prevent encroachments upon public right, and if they do not, any citizen may take the necessary steps to do so, and if there is not only a failure to act by either, but affirmative action by the public authorities with the apparent approval of every one interested, under which the situation is changed and permanent improvements are made, the principles of equity require that the public should be estopped. The doctrine has been applied in *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25, *Chicago and Northwestern Railway Co.* v. *People ex rel.* 91 id. 251, *County of Piatt* v. *Goodell,* 97 id. 84, *Martel* v. *City of East St. Louis,* 94 id. 67, and *City of Chicago* v. *Union Stock Yards and Transit Co.* 164 id. 224. We think this a proper case for the application of the doctrine. Permanent improvements and great

expenditures have been made which would not have been made but for the positive action of the city and its officers, and to compel the abandonment of the premises for use as depot grounds would be contrary to natural justice. The relator cannot demand the writ of *mandamus* as an absolute right, but it is to be granted or withheld in the exercise of a sound judicial discretion, in view of all the circumstances. The facts alleged in the answers as creating an estoppel, and the fact that the public use and convenience were fully provided for by a street of at least the ordinary width, which was wholly unobstructed, were admitted. From such facts it appears that the public good would not be promoted in any substantial way by granting the writ, but, on the contrary, that the representatives of the public have always considered, and still consider, the present location of the station grounds as best for the convenience of the public. The fact that there is an unobstructed street 80 feet wide, fully accommodating public travel, does not affect any legal right to the remainder, (*Smith* v. *McDowell,* 148 Ill. 51,) but it is a circumstance proper to be considered in exercising the discretion confided to the court.

In view of all the facts and circumstances we think the court did not err in denying the writ.

The judgment is affirmed.        *Judgment affirmed.*