152    APPELLATE COURTS OF ILLINOIS.

Sinclair Refining Co. v. City of Chicago, 246 Ill. App. 152.

**Sinclair Refining Company, Appellee, v. City of Chicago and Morgan A. Collins, Chief of Police of the City of Chicago, Appellants.**

**Gen. No. 31,589.**

1. ESTOPPEL—*when not created by city official's issuing permit beyond his authority.* A city official who, in excess of his authority, issues a permit to erect a gasoline filling station closer to schools ·and other buildings than allowed by ordinance does not by such act create an estoppel *in pais* against the city which will prevent it from forbidding further construction of the building, and this is true notwith-

Sinclair Refining Co. v. City of Chicago, 246 Ill. App. 152.

standing the owner of the station has made expenditures and started work on erecting the station.

2. ESTOPPEL—*as not springing from aldermanic custom.* The custom of city aldermen to pass an order for a permit promised by one of them, does not create an estoppel *in pais* against the city to forbid work under an illegally granted permit, on its appearing that the owner knew such permit was contrary to ordinance but that he made investments in spite thereof.

3. MUNICIPAL CORPORATIONS—*when council's order for building permit a nullity.* A council's order permitting the erection of a filling station contrary to ordinance is a nullity if no application for permit has been filed as required by the city ordinances.

4. INJUNCTIONS—*when not issued to restrain interference with unauthorized building of filling station.* An injunction will not issue to restrain interference with the building of a filling station under a permit illegally issued, after the complainant undertook to install underground tanks contrary to ordinance, and to build closer to public schools than permitted by ordinance, where the owner made its investments with knowledge of the law and facts, and without attempting to procure a proper permit from the city.

5. MUNICIPAL CORPORATIONS—*repeal of ordinance by council order.* A mere order of a city council granting a building permit, not passed and published as an ordinance, does not of itself operate to repeal a prior ordinance restricting the granting of building permits.

6. INJUNCTIONS—*when bill will lie on contention over building permit.* A bill for injunction, rather than an action at law, is the proper remedy of a property owner who has secured the illegal issue of unrevoked building permits, and claims the mutual conduct of himself and city officials has created an estoppel *in pais*, and seeks to prevent the city from interfering with his building under the permits.

Appeal by defendants from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and remanded with directions. Opinion filed October 19, 1927.

FRANCIS X. BUSCH, Corporation Counsel, for appellants; FRANK J. CORR, W. ARNOLD AMBERG and ROY S. GASKILL, Assistant Corporation Counsel, of counsel.

WARREN PEASE, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal by the defendants, City of Chicago and Morgan A. Collins, Chief of Police of the City of Chicago, from a decree ordering them to refrain from interfering with the installation by the complainant of an oil station on certain property at the southeast corner of South Ashland boulevard and West Harrison street, Chicago.

The issue in the case was precipitated by an amended bill of complaint, filed by the complainant Sinclair Refining Company on April 17, 1925, in the superior court, the answer of the defendants, the City of Chicago and Morgan A. Collins, Chief of Police of the City of Chicago, filed April 22, 1925, and a general replication of the complainant, filed May 19, 1925. The matters involved were referred to a master in chancery. Evidence was taken before him, and after the close of the hearings he filed his report, containing the evidence, and recommending that the injunction prayed for be allowed. Upon consideration of the exceptions to the master's report, the chancellor approved the report and the recommendation that the injunction be allowed, and entered a decree in accordance therewith.

The evidence shows, substantially, the following: The complainant is a corporation authorized to transact business in Illinois, and is in the business of marketing petroleum and refined petroleum products, and for that purpose has established a number of filling stations in Chicago for the purpose of distributing its products to consumers. Some time prior to July 27, 1923, the complainant, desiring to establish a new service station at the southeast corner of the intersection of West Harrison street and South Ashland boulevard, entered into negotiations with the owners of Lot 1 and the north 22 feet of Lot 2, being the property at the southeast corner of the streets just mentioned. The property has a frontage of 72 feet on South Ashland boulevard, and 148 feet on West Harrison street. On July 14, 1923, having obtained the

Sinclair Refining Co. v. City of Chicago, 246 Ill. App. 152.

written consent of the neighboring property owners, as required by ordinance, the complainant made a written application to the Bureau of Fire Prevention and Public Safety, of the Fire Department of the City of Chicago—one of the functions of which bureau was to issue permits for the installation of underground gasoline tanks in the City of Chicago—for a permit for the installation upon the premises in question of three 1,000 gallon underground gasoline tanks. At the bottom of that application, under date of July 26, 1923, and signed by J. H. Hogenson, inspector, is the following:

"I hereby approve site for installation and certify that frontages are required, provided order is obtained from Council to overcome restriction, it being within 200 feet of a school."

Following the qualified approval of Hogenson, the inspector, there appears, under the same date, the words, "Approved for permit," signed by John C. McDonnell, chief of fire prevention and public safety.

A letter dated July 25, 1923, was introduced in evidence, signed "Alderman John Powers, Ald. 25 Ward, by Walter J. Powers, sec.," addressed to McDonnell, chief of fire protection bureau, containing the following:

"Will you kindly issue to the Sinclair Refining Company necessary permits to install gasoline tanks on the premises known as 605 S. Ashland Boulevard? I will introduce an ordinance at the next meeting of the City Council granting the above permits."

It is the evidence of Sullivan that at the time the permit was being issued, he himself objected to the issuance of the permit because the letter above mentioned was signed by Alderman Powers' brother, but that he, Sullivan, issued it on the approval of McDonnell.

On July 26, 1923, a permit signed by J. C. McDonnell, chief of fire prevention and public safety was issued

156    APPELLATE COURTS OF ILLINOIS.

Sinclair Refining Co. v. City of Chicago, 246 Ill. App. 152.

to the complainant to install three 1,000 gallon gasoline tanks on the property in question. It stated, among other things, the following:

"This permit is issued and accepted upon the condition that said tank shall be constructed, installed and maintained in accordance with and subject to all conditions, stipulations and requirements of the ordinances of the City of Chicago, and to all orders and ordinances which may be passed by the City Council pertaining to same, and to all orders of the Chief of the Bureau of Fire Prevention and Public Safety." At the time the permit was issued, the complainant paid to the City, and the City has ever since retained, fees in the sum of $33.75.

It is the testimony of Sullivan, the head clerk of the bureau of fire prevention, that prior to the issuance of the permit, he stated to complainant's representative that the complainant could not get a permit for the installation of the tanks in question unless the complainant got a letter from the alderman of the ward in which the complainant's station was to be installed; that he (apparently meaning the alderman) was willing to introduce a council order at the next meeting of the council to overcome that restriction, that is, to overcome the 200-foot restriction prohibiting a filling station within 200 feet of any church, school, theater, or hospital ground.

On July 27, 1923, the complainant bought the property in question for the sum of $26,000. At the time the property was purchased it was improved by a two and a half story brick building, fronting on Ashland boulevard, which building had a reasonable rental value of $100 a month, and a property value of $15,000. On October 13, 1923, the complainant wrecked and removed the building from the premises in question.

On October 15, 1923, the complainant was given a written permit by the West Chicago Park Commis-

sioners to put in a cement carriage drive, and on November 17, 1923, complainant was given permission by the commissioner of buildings of the City of Chicago, to erect a one-story and basement brick service station, at 605 and 609 South Ashland avenue.

There was introduced in evidence from proceedings of the city council of Chicago the following: ''Alderman D. A. Horan (for Alderman Powers, absent), presented an order directing the issuance of a permit to the Sinclair Refining Company for the installation of a filling station at No. 605 South Ashland Avenue, which was referred to the Committee on Gas, Oil and Electric Lights,'' and there was, further, introduced, as part of the proceedings of the council at a meeting of November 21, 1923, the following:

''The Committee on Gas, Oil and Electric Light, to whom has been referred (November 8, 1923, page 1122) an order directing the issuance of permits for the installation of a filling station at No. 605 South Ashland Avenue, submitted a report recommending the passage of a substitute order submitted herewith. Alderman Clark moved to concur in said report and to pass said order.

'' 'The following is the order passed:

'' 'Ordered that the Chief of the Bureau of Fire Prevention and Public Safety be and he is hereby directed to revoke any permit or permits which have been issued by the Bureau of Fire Prevention and Public Safety for the installation and operation of a filling station on the premises, and known as No. 605 South Ashland Avenue.' ''

On November 20, 1923, the complainant put men upon the premises to begin the erection of the filling station and the installation of the tanks, and while they were at work, the complainant was notified by the police department, under the direction of Morgan A. Collins, to cease work on the installation of the gasoline tanks, and to cease breaking the sidewalk in

front of the premises, and to stop erecting a service station thereon, under threat of immediate arrest.

On November 21, 1923, the complainant received through the mail from McDonnell, a letter informing it to cease all work under permit No. 8176 (being the permit in question) "for the reason that no Council order was obtained to overcome that part of the ordinance prohibiting a filling station within 200 feet of the grounds used for church, school, theater or hospital purposes." The complainant, accordingly, ceased work, and has done nothing further upon the premises under the alleged permits up to the present time.

On January 2, 1925, at a meeting of the city council, an order was passed directing the chief of the fire prevention and public safety to issue a permit to the complainant to install gasoline tanks in connection with the filling station to be located on the east 48 feet of the property at the southeast corner of South Ashland boulevard and West Harrison street—which is only part of the property described in the original application of July 14, 1923.

On February 9, 1925, the complainant sent a letter to the bureau of fire prevention and public safety, stating that it desired to amend its former application so as to provide for the installation of the tanks on only the east 48 feet of the property in question, and requesting a permit "in accordance with the provisions of an order passed by the City Council of Chicago, on January 2nd, 1925."

On February 10, 1925, the fire commissioner of Chicago sent a letter to the complainant, in which it was stated that the fire commissioner had no authority to permit such an amendment, without the filing of a new application.

At the time in question, the ordinance of the City of Chicago—The Chicago Municipal Code, 1922, ch. 51—provided that it should be unlawful to install any tank or tanks, containing certain inflammable liquids, with-

Sinclair Refining Co. v. City of Chicago, 246 Ill. App. 152.

out first obtaining a permit from the chief of fire prevention and public safety, and section 2279 (b) of article 1 of chapter 51, provided that no tank or tanks should be installed on any lot or plot of ground "where any of the boundaries of any such lot or plot of ground are within 200 feet of the nearest boundary of any lot or plot of ground used for school, hospital, church or theatre."

As there is no doubt from the evidence, in our judgment, but that the property in question was within 200 feet of a public school, church or hospital, and that the installation of the tanks on the premises in question would, therefore, be in violation of the ordinances of the City of Chicago, having particular reference to sections 2276, 2277 and 2279, of the Municipal Code of Chicago, and that the complainant was aware of the law and the facts, the question arises whether the issuance of the permit of July 26, 1923, signed by McDonnell, chief of fire prevention and public safety, issued as it was, and without any order or action of the city council, may be considered as giving the complainant, bearing in mind, also, what the complainant has invested in the property, since July 26, 1923, the right to restrain the defendants from interfering with the installation of the tanks, and, as a consequence, to restrain the defendants from interfering with the construction of certain driveways, and a filling station on the premises in question.

It is contended for the complainant that, inasmuch as it was informed by Sullivan, the head clerk of the bureau of fire prevention, that prior to the issuance of the permit it could not get a permit for the installation of the tanks in question unless it first got a letter from the alderman of the ward in which the tanks were to be installed, and that Sullivan stated that the alderman was willing to introduce a council order at the next meeting of the council to overcome the 200-foot restriction, and inasmuch as it obtained the letter

of July 25, 1923, signed, "Alderman John Powers, Ald. 25 Ward, by Walter J. Powers, Sec.," which was addressed to McDonnell, chief. of fire prevention bureau, and contained the following: "Will you kindly issue to the Sinclair Refining Company necessary permits to install gasoline tanks on the premises known as 605 S. Ashland Boulevard? I will introduce an ordinance at the next meeting of the City Council granting the above permits," and as on July 26, McDonnell issued the permit, and as on the next day, July 27, it bought the property in question and thereafter spent a large sum in wrecking the building and preparing the property for an oil station, the city was not thereafter entitled to revoke the permit and prevent the installation of the tanks and the establishment of the oil station, although on July 26 at the time the permit was granted, the complainant knew that in order to overcome the restriction of the ordinance as to the property being within 200 feet of the school, church and hospital, it was necessary, in any event, to obtain an order from the city council, and that no such order had been passed.

Counsel for the complainant has called our attention to the following cases: *Chicago, R., I. & P. R. Co. v. City of Joliet,* 79 Ill. 25; *Logan County v. City of Lincoln,* 81 Ill. 156; *Chicago & N. W. Ry. Co. v. People ex rel. Elgin,* 91 Ill. 251; *Martel v. City of East St. Louis,* 94 Ill. 67; *County of Piatt v. Goodell,* 97 Ill. 84; *City of Chicago v. Union Stock Yards & Transit Co.,* 164 Ill. 224; *People v. City of Rock Island,* 215 Ill. 488; *People v. Wieboldt,* 233 Ill. 572; *People ex rel. Deddo v. Thompson,* 209 Ill. App. 570; *Melin v. Community Consol. School Dist. No. 76,* 312 Ill. 376; *Webster v. Toulon Tp. High School Dist. No. 4,* 313 Ill. 541.

We do not find, however, that any of them helps to establish the claim of the complainant. They do show that estoppel *in pais* may exist against a municipality, but, also, that each case depends upon its

particular facts. Especial emphasis is placed on the decision in *People ex rel. Deddo v. Thompson, supra,* but it will be observed that the facts in that case are unlike those here. In the *Thompson* case the act relied upon as the foundation of the estoppel was an act of the city itself, an order made and enacted by its legis- lative body, the city council; whereas, in the instant case, the alleged estoppel is based solely and only upon the act of a ministerial officer—an act unauthorized by ordinance—in issuing the permit for the installa- tion of the tanks. In *Meltzer v. City of Chicago,* 152 Ill. App. 334, the court said, the doctrine of estop- pel *in pais* "does not apply where the city official has exceeded his authority in issuing a permit in violation of a city ordinance." Citing *Burton Co. v. City of Chicago,* 236 Ill. 383; *Hibbard, Spencer, Bartlett & Co. v. City of Chicago,* 173 Ill. 91. In the *Meltzer* case, the court further said, "Complainants were charged with knowledge of the ordinance and its provisions. They knew that the structure which they proposed to put on the roof of their building would be, when erected, within a few feet of the adjoining building, and they should have known that it was prohibited by the ordinance. As said in *J. Burton Co. v. City of Chicago, supra,* complainants, in applying for a permit, must have known the commissioner had no power to grant it. The permit itself purports to be issued in pursuance of the ordinances of the city. The issue of the permit gave no right to complainants because the commissioner who signed it was without authority to issue it. He was prohibited from issuing the permit by the ordinance. 'Every person is presumed to know the nature and extent of the powers of municipal offi- cers, and therefore cannot be deemed to have been deceived or misled by acts done without legal author- ity.' *Seeger v. Mueller et al.,* 133 Ill. 86, 95; *City of Danville v. Danville Water Co.,* 178 id. 299; *City of Chicago v. Williams,* 182 id. 135."

In *Wise v. City of Chicago,* 183 Ill. App. 215, this court re-emphasized the principle, as announced by Mr. Justice Smith in the *Meltzer* case, that the issuance of a permit by a city official in violation of a city ordinance does not give rise to an estoppel *in pais.*

The complainant, knowing the law and, also, the fact that at the time the permit was issued, the city council had not acted in the matter, and, as a consequence, that it, the complainant, had no legal right to a permit, by what logic can it now claim that it was misled by the conduct of McDonnell? If the complainant did work and incurred expense knowing at the time that it could not, without affirmative action by the city council, legally establish an oil station on the property in question by reason of its nearness to a public school, by what reasoning may it now claim that it was deceived, not by an order or any action of the city council, but merely by the acts of a city employee? It was not led along to its detriment, as the petitioner in the *Thompson* case, *supra,* by an act, an order of the municipality itself, acting by and through its legislative body, the city council. Mr. Justice Scott said in *Logan County v. City of Lincoln,* 81 Ill. 156, 159, "Before the doctrine of estoppel can be invoked, there must have been some positive acts by the municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done." To hold that merely the acts of an employee could be the basis for such an estoppel as is claimed in the instant case, would be going in the direction of suspending and repealing ordinances without any action on the part of the city council; in other words, making acts of the employees or agents, though beyond the scope of their authority, and known by the parties to be such, the equivalent of legislation.

Sinclair Refining Co. v. City of Chicago, 246 Ill. App. 152.

There does not seem to be any equity in the complainant's claim. The money it spent was not induced by any deceit or fraud, or misrepresentation. All the time it knew of the ordinance and knew all the obstacles and all the facts, it went on with its work with full knowledge that no legal permission had been obtained and might be refused. Such a situation, of course, lacks the essential elements of an estoppel.

The only action taken in the matter by the city council, as to the property in question, at any time between July 26, 1923, when the application was filed, and April 17, 1925, when the bill was filed, was the passing of an order on November 21, 1923, to revoke the permit, and throughout all that period from the time of filing the application, which was before it, the complainant, even purchased the property in question, it actually knew and was informed that it could not without at least an order of the city council obtain a legal permit. That being the situation, we are of the opinion, as stated above, that there is no equity in complainant's claim; and that it failed to prove that the defendant was estopped to revoke the permit for the installation of the tanks. Whether or not, if the complainant had seasonably obtained an order of the city council in addition to what it did get, an estoppel *in pais* would have arisen, although the installation of the tanks would be in direct violation of the ordinance, we are not called upon to decide. That general subject is discussed fully in *Hibbard, Spencer, Bartlett & Co. v. City of Chicago,* 173 Ill. 91. Of course, if the complainant had no right to install the tanks with an order, *a fortiori,* as here, he had none without an order.

It is urged by the complainant that "where the alderman of the ward undertook to introduce and presumably advocate the passage of a council order for a permit to complainant to install its tanks, it may reasonably be inferred that this is a practice, and that

upon the intervention of the alderman of the ward where the property lies, the other aldermen, as a matter of aldermanic courtesy, will assist in getting some kind of a pretended authorization of the City Council to override the ordinance," that "it is small wonder that complainant felt that it could rely upon it and based its subsequent conduct upon a custom"; that it is a "condition out of the ordinary"—referring to *People v. City of Rock Island*, 215 Ill. 488, and *People ex rel. Deddo v. Thompson*, 209 Ill. App. 570—and that an estoppel *in pais* arises to prevent injustice. In our judgment, the facts do not justify that conclusion. On the other hand, they rather tend to show a reckless willingness to purchase property and spend a large sum of money in converting it into an oil station, at the obvious peril of being unable to obtain the requisite legal authority provided for by the ordinances of the city.

As to the order of January 2, 1925—which was more than a year after the permit in question had been revoked, and all of the things done which were relied upon to create an estoppel had taken place—in regard to the east 48 feet of the property in question, no application had ever been filed, and the order was therefore a nullity; further, no argument is made that the complainant is entitled to the relief prayed for by reason of that order.

In our judgment there are a number of reasons why the complainant is not entitled to the relief it asks; first, it undertook to install underground gasoline tanks in violation of sections 2276, 2277 and 2279, article 1, chapter 51 of the Ordinances of the City of Chicago; second, the permit which it received was in violation of section 2279 (b), and it was seasonably informed by the city to that effect; third, it did not obtain from the city council as a foundation of a possible estoppel *in pais* any order waiving the restriction of 2279 (b); and four, it bought the property and

undertook to erect an oil station thereon after it was informed by a representative of the city that an order of the city council was a prerequisite. Of course, if the complainant had obtained an order of the city council for a permit, and relied thereon, and subsequently had made the investments which it did, it would have some claim to an estoppel *in pais*—as in the *Thompson* case—even though a mere order by the council not passed and published as an ordinance of the city, purporting to waive the 200-foot restriction of section 2279 (b), would not constitute, in and of itself, a repeal of section 2279 (b). *Hibbard, Spencer, Bartlett & Co. v. City of Chicago, supra.*

It is claimed for the defendants that the bill will not lie; that the complainant had an adequate remedy at law. Considering, however, that the prayer for relief was based on a claim that the complainant had three permits, that of July 26, 1923, issued by the bureau of fire prevention and safety to install underground tanks, that of August 21, 1923, issued by the street department to construct two driveways, and that of November 17, 1923, issued by the department of buildings to erect a one-story and basement brick service station; and on the claim that none of them had been revoked, and that the mutual conduct of the parties brought about an estoppel *in pais,* we are of the opinion that the gravamen of the bill was such that there was no adequate remedy at law, and that a court of equity was the proper forum. *Moore v. Gar Creek Drainage Dist.*, 266 Ill. 399, 404. *Gulf Lines Connecting R. of Illinois v. Golconda Northern Ry.*, 290 Ill. 384, 392. *Lowery v. City of Pekin,* 186 Ill. 387, 398. *City of Peoria v. Johnston,* 56 Ill. 45, 52.

For the reasons stated, the decree will be reversed and the cause remanded with directions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*

HOLDOM and WILSON, JJ., concur.