Arthur E. Hurt et al., Appellants, v. Rudolph J. Hejhal et al., Appellees.

Gen. No. 33,688.

Heard in the first division of this court for the first district at the October term, 1929.　Opinion filed December 1, 1930.

WALTER TRUC and JAMES S. WIGHT, for appellants.

John C. Setecka and B. M. Steiner, for appellees.

Mr. Justice McSurely delivered the opinion of the court.

By this appeal complainants question the propriety of a decree dismissing, after hearing, their bill of complaint which sought a mandatory injunction enjoining defendants from erecting or maintaining a building alleged to be erected in violation of certain building restrictions contained in a deed and of the zoning ordinance of the City of Berwyn.

Neither the City of Berwyn nor William Kramer, building commissioner, has filed an answer to the bill. We shall hereafter designate Rudolph J. Hejhal and Marie Hejhal as defendants. Their answer denied that their premises were subject to the alleged restrictions in the deed and asserted that their premises were rezoned as an apartment district and that there were a large number of other apartment buildings in the locality; that they have complied with all the requirements of the building commissioner of the City of Berwyn and that they have expended large sums of money, in excess of $25,000, in accordance with the building permit issued to them. The answer also denied that the erection of the building would cause damages to the complainants.

The premises in question are in the City of Berwyn, at the southeast corner of Clarence Avenue, a north and south street, and 19th Street, which runs east and west. The premises owned by complainants lie immediately to the south and adjoin the lot owned by defendants.

In September, 1926, 25 lots in this Berwyn subdivision, including the lots owned by the parties here, were conveyed to Joseph J. Mrizek and Vlasta Mrizek by a deed which contained the following:

"The said premises are hereby restricted to two or more residence (commonly known as two flat buildings) purposes only, and shall not at any time hereafter be used for any other purpose.

"The said conditions shall run with the land and inure to the benefit of and be binding upon the grantees herein and all subsequent owners of the respective lots hereby conveyed."

In October, 1926, Mrizek and his wife conveyed to the complainants the premises now occupied by them. It was already improved with a two-story building, containing two flats, which were thereafter occupied by the grantees as their respective residences. This deed provided that it was subject to the conditions and restrictions shown in the prior conveyance.

A zoning ordinance was adopted by the City of Berwyn in September, 1923, whereby restrictions were laid upon lots in the locality in which defendants' lot was situated, restricting improvements to two apartment buildings and forbidding any building to exceed 35 feet in height or two and a half stories or to cover in excess of 40 per cent of the area of a corner lot, with an exception not now involved. There was also a provision that there should be a rear yard of not less than 10 per cent of the depth of a corner lot. The building proposed by defendants was a three-story building with about eight inches of rear yard and occupying in excess of 71 per cent of the area of the lot.

February 15, 1929, Mrizek and his wife conveyed to the defendants the corner lot in question, which was then vacant. Thereafter, on March 4, 1929, Rudolph J. Hejhal applied to and obtained from the building commissioner of Berwyn a permit to construct on said premises a nine-apartment building covering nearly the entire area of the lot.

Dr. Hurt, one of the complainants, protested to the building commissioner of Berwyn. There is some dis-

pute as to how far the work had progressed at this time. Defendant Hejhal testified that he commenced work on or about March 13; that the first time Dr. Hurt ever talked to him was about March 25, when building operations were suspended for two days and at which time the building had progressed beyond the first floor and almost to the second. A meeting of the building committee of the council was called for March 27 to consider the matter. This meeting was continued to April 9, when the Berwyn officials ordered the building stopped and nothing was done for two weeks. On April 23, the city council rescinded the order of April 9 stopping the work and thereupon defendants continued the work. The building was up to the roof at the time this bill was filed.

Had the building restrictions contained in the deed been so far disregarded and abandoned by general consent and the acts of the property owners in the locality so that a court of equity will not enforce such restrictions by injunctions?

The general rule is stated in *Ewertsen v. Gerstenberg*, 186 Ill. 344:

"Equity will not, as a rule, enforce a restriction, where, by the acts of the grantor who imposed it or of those who derived title under him, the property, and that in the vicinage, has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction,—or, in short, it may be said that where, from all the evidence, it appears that it would be against equity to enforce the restriction by injunction, relief will be denied, and the party seeking its enforcement will be left to whatever remedy he may have at law."

To the same effect are *Curtis v. Rubin,* 244 Ill. 88; *Kneip v. Schroeder,* 255 Ill. 621; *Wiegman v. Kusel,* 270 Ill. 520; *Gilmore v. Keogh,* 241 Ill. App. 28.

The evidence shows that within a radius of one block from the premises in question there are 6 large apartment buildings; that within a radius of 3 blocks there are approximately 15 apartment buildings of various sizes and in each case larger than a two-flat building; that within a radius of 4 blocks there are over 20 apartment buildings ranging from 3 to 38 apartments. These physical facts indicate clearly an abandonment of the building restrictions contained in the deed above referred to and a general acquiescence in the breach of such restrictions or conditions.

In *Wiegman v. Kusel,* 270 Ill. 520, cited by complainants, it was held that equity will not enforce a building restriction where, by the acts of the grantor who imposed it or of those who derived title under him, the character of the property in the vicinity has so changed as to make it unfit or unprofitable for use if the restriction is enforced. In that case, although the injunction was ordered, the facts found by the court were that there had been no change in character or environment making it unprofitable to enforce the restriction, that the building restriction had been observed not only on the street there under consideration but on other streets in the subdivision, with only one possible exception some distance away.

It is worthy of comment that there was no legal proceeding brought by any of the lot owners, including the complainants herein, to prevent the erection of any of these other apartment buildings, and this is impressively true of the two large apartment buildings occupying, respectively, the northwest corner and the southwest corner of Clarence Avenue and 19th Street. Defendants' property occupies the southeast corner of this intersection. There is also another apartment building in the same block.

The facts as to the changed conditions of the locality in question justified the refusal of the chancellor to issue an injunction on the ground of alleged violation of the building restrictions in the deed of conveyance.

Are complainants entitled to an injunction because of the alleged violations of the zoning ordinance?

As a general rule, where a party acts in good faith under affirmative acts of the city and has made expensive improvements so that it would be highly unjust and inequitable to destroy the rights acquired, the doctrine of equitable estoppel will apply and a court of equity will not, at the suit of an individual, restrain the erection of such building. In *People v. Wieboldt,* 233 Ill. 572, it was held, in effect, that where permanent improvements had been made at a large expenditure of money and while relying upon the action of a city council, thereafter to deprive him of the rights secured by city ordinance would be a fraud upon him. In *People v. City of Rock Island,* 215 Ill. 488, it was held that where there was affirmative action by the public authorities under which permanent improvements were made, the principles of equity require that the public should be estopped from ordering such improvements removed. To the same effect is *People v. Maxon,* 139 Ill. 306. In *Sinclair Refining Co. v. City of Chicago,* 246 Ill. App. 152, this principle was recognized, although there it was held that the city was not estopped by the illegal act of the official. The court, however, said:

"If the complainant had obtained an order of the city council for a permit, and relied thereon, and subsequently had made the investments which it did, it would have some claim for an estoppel *in pais.*"

In *People v. Thompson,* 209 Ill. App. 570, after reviewing many cases, it was held that, where a garage is built at great cost in reliance upon an order of the city council directing that a permit issue therefor, the doctrine of estoppel *in pais* will be applied to prevent

the city from refusing to issue a license to conduct the garage and that mandamus will be granted to compel its issuance, although the garage was constructed in violation of an ordinance.

March 4, 1929, defendants obtained their permit from the building commissioner. The commissioner explained that he issued the permit according to the common custom; he was, apparently, following a prior order of the city council of March 23, 1926, concurring in the recommendation of the board of appeals to allow the erection of apartment buildings in the vicinity which included the property of defendants. We think it is evident that the numerous three-story apartment buildings in the locality were erected by reason of permits issued pursuant to this order.

After consideration of the objections to the construction of defendants' building after work had begun, the city council on April 23, by resolution, affirmatively again authorized defendants to proceed with the work. It is also in evidence that in reliance upon the foregoing facts defendant Hejhal had expended a large sum of money and had become obligated in this respect to a total of approximately $37,000. The entire cost of the building, including the value of the ground, was estimated at about $41,000. Defendant testified that at the time of the hearing in court he had spent about $25,000 in the erection of the building and had contracted for other material and labor in addition.

The record shows a state of facts calling for the application of the rule that the city is estopped from interfering with the building on the ground that it violates an ordinance. Defendants apparently acted in good faith under the affirmative acts of the City of Berwyn and have made expensive and permanent improvements which it would be highly inequitable and unjust to destroy.

Complainants object to the meager yard in the rear of defendants' building, but it is shown by uncontra-

dicted testimony that many of the other apartment buildings in the vicinity cover the entire area of the lots.

Complainants seem to claim that defendants used undue haste in pushing the construction of the building to completion. The evidence does not bear this out.

There was some evidence that complainants stated that the damage to their adjacent property by reason of the improvements erected by defendants would amount to $1,500. Manifestly, it would be unjust to compel defendants to tear down a substantial part of their building where their damages, if this were done, would be so much greater than the damage claimed to have been sustained by complainants.

The granting of an injunction is within the sound discretion of the chancellor and a decree denying the same will not be disturbed unless there has been an abuse of that discretion. *Bondy v. Samuels,* 333 Ill. 535.

Upon the record we hold that the decree dismissing the bill for want of equity was proper, and it is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.